## CHERNEY *v.* CLAUSS.

## CLAUSS *v.* CHERNEY.

---

PATENTS; INTERFERENCES; PRIORITY; BURDEN OF PROOF; ORIGINALITY OF INVENTION.

1. In an interference proceeding between a patentee and an applicant, the subject-matter of which was an invention in the construction of baking-ovens, it was *held*, affirming a decision of the Commissioner of Patents, that the applicant was the first inventor of the construction covered by certain of the counts of the issue, and that the patentee was the first inventor of the construction covered by the other counts.

2. Where, in an interference case, it appeared that the applicant filed his application after the issue of a patent to his opponent and copied the claims of the patent for the purpose of forcing an interference, it was *held* that the burden was on the applicant to prove his case beyond a reasonable doubt.

3. In an interference case between an applicant and a patentee, where the applicant proves that he made patterns embodying certain counts of the issue before any date proved by the patentee, and the patentee asserts they were made from disclosures by him, but this is denied by the applicant, the burden is on the patentee to prove the disclosure, and if he fails to sustain it the applicant will be entitled to an award of priority of invention on those counts.

Nos. 281 and 285. Submitted January 11, 1905. Decided February 7, 1905.

HEARING on cross appeals from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Thomas A. Banning, Mr. Ephraim Banning, Mr. Samuel W. Banning,* and *Mr. Walker Banning* for Cherney.

*Mr. John W. Strehli* and *Mr. Paul Finckel* for Clauss.

Mr. Justice MORRIS delivered the opinion of the Court:

These are cross appeals from the decision of the Acting Commissioner of Patents in an interference case wherein the subject-matter of controversy is an invention in the construction of baking-ovens, which is officially set forth by the Patent Office in ten several counts as follows:

"1. In an oven having a baking-chamber, a fire-box at one side and below the baking-chamber, a partition below the baking-chamber and provided with a passage one end of which is extended to the outside of the oven and provided with a door, two flues at opposite sides of said partition respectively, and extended from the fire-box toward the opposite side of the oven, and other flues outside of and in the same vertical plane with and adapted for communication with the first-named flues, means for circulating the products of combustion from said flues above the baking-chamber, a shaft extending down through the

baking-chamber and having its lower end in the passage below said chamber, a step-bearing for said shaft in said passage, driving means for said shaft and a plane on said shaft within the baking-chamber to support articles to be baked.

"2. An oven having a baking-chamber, a fire-box at one side and below the baking-chamber, a partition below the baking-chamber provided with a passage one end of which is extended to the outside of the oven and provided with a door, two flues at opposite sides respectively of said partition and extended from the fire-box toward the opposite side of the oven, other flues outside of and in the same vertical plane with and adapted for communication with the first-mentioned flues, upwardly-extended flues adapted for communication at their lower ends with the outside flues below the baking-chamber, two sets of flues in the same plane above the baking-chamber, the outer flue of each set having communication with one of said upwardly-extended flues and the inner flue of each set being adapted for communication with a smoke-outlet, a shaft extending down through the baking-chamber with its lower end in the passage below said chamber, a step-bearing for said shaft in said passage, driving means for said shaft and a plane on said shaft within the baking-chamber to support articles to be baked.

"3. An oven having a baking-chamber, means for heating the same, a vertical shaft in said chamber, arms extending radially from the shaft and provided with depressions, plaster in said depressions and a covering for said arms held therein by said plaster.

"4. An oven having a baking-chamber, means for heating the same, a vertical shaft extended in said chamber, arms extended radially from the shaft, parts extended intermediate the outer ends of said arms, each of said arms and intermediate parts having a longitudinal flange and depressions, plaster in said depressions and a covering formed in sections held on said arms and intermediate parts between said longitudinal flanges.

"5. An oven having a baking-chamber, means for heating the same, a vertical shaft in said chamber, driving means for said shaft, a plane for supporting articles to be baked and formed

of a framework and a covering supported thereon, a collar of the shaft below said plane, diagonal braces extended from said collar up to said framework, a central collar on the shaft, and brace-rods having oppositely screw-threaded ends, each such brace-rod having one end engaged with said central collar and its opposite end engaged with one of said diagonal braces.

"6. An oven having a baking-chamber, a fire-box, a partition below the baking-chamber and forming on its opposite sides flues having communication with said fire-box, said partition having a passage one end of which is extended to the outside of the oven-wall and provided with a door, a vertical shaft in the baking-chamber with its lower end extended in said passage-way, a plane on the shaft in the baking-chamber, and a step-bearing for said shaft in said passage.

"7. An oven having a baking-chamber, means for heating the same, a vertical shaft extended in said chamber, a plane within the chamber and on said shaft, braces having their lower ends supported adjacent to the shaft and below said plane, said braces being extended upward with their upper portions inclined out from the shaft and arranged to support said plane and devices for drawing the inclined upper portions of the braces toward said shaft for raising said plane.

"8. An oven having a baking-chamber, means for heating the same, a shaft extended in said chamber, arms extended radially from said shaft, a covering rested on said arms and forming a plane for supporting articles to be baked, means for driving said shaft and an annular part rested on said arms at the center of said plane and provided with a raised flange against which the covering of the device has engagement to hold said covering against displacement, said annular part being also provided with downwardly-extended portions having engagement between said arms to hold said annular part in position on the arms.

"9. An oven having a baking-chamber, means for heating the same, a vertical shaft extended in said chamber, a plane within the chamber and on said shaft, braces having their lower ends supported adjacent to the shaft and below said plane and having their upper portions extended upwards and inclined out

from the shaft, a collar held on the shaft and brace-rods having their ends engaged with a collar and having at their outer ends adjustable connection with said inclined braces.

"10. An oven having a baking-chamber, means for heating the same, a vertical shaft in the chamber, a plane on the shaft in the chamber, means for driving the shaft, the lower end of the shaft having a central recess and being provided with a flanged collar in anchor-plate beneath the lower end of the shaft, a stirrup comprising upwardly-extended spaced arms produced on said anchor-plate, two correspondingly-grooved bearing-plates one above the other and provided with central openings alined with the central recess in the lower end of the shaft, the lower bearing-plate being rested on the stirrup and the flanged collar of the shaft being rested on and secured to the upper bearing-plate, balls interposed between the bearing-plates and engaged in the grooves thereof, a stud having its upper end engaged in the central recess in the lower end of the shaft, said stud being passed down through the central openings in the bearing-plates, the stirrup having a central bearing at its upper part in which the lower end of said stud is engaged and a screw carried by the stirrup with its upper end engaged under the lower end of said stud and its lower end formed with a head at the under side of the upper part of the stirrup and between the two arms thereof."

Of this invention the Examiner of Interferences says: "The invention in issue relates to rotary bake-ovens and consists of a framework of metal on which is supported in horizontal plane a baking-surface of soapstone or similar materials. This framework is supported on a vertical rotatable shaft which rests at its lower end on a ball-bearing. The framework is inclosed in brick-work in which there is a fire-box at the rear from which flues extend beneath the baking plane forward and then double backward and are then carried above the baking plane where the same arrangement of flues is practically repeated. Neither the arrangement of flues nor the rotary baking plane is broadly new; and the invention consists merely in improvements in specific details."

Counts 3, 4, 5, 7, 8, 9, and 10 have reference to the rotating baking-support of the oven; counts 1, 2, and 6, in addition to this, cover a certain arrangement of flues.

All the counts are contained in a patent issued to one of the parties, William Clauss, on May 13, 1902, upon an application filed by him on November 25, 1901. They were copied from the patent for the purpose of this interference by the other party, Anton F. Cherney, in his application filed March 23, 1903, upwards of ten months after the issue of the patent to Clauss. The burden, therefore, is strong upon Cherney to prove his case beyond a reasonable doubt.

Clauss, in his preliminary statement, alleged conception of the invention by him about May 1, 1900; disclosure thereof about June 1, 1900; and reduction to practice on May 15, 1901. Cherney, in his preliminary statement, alleged conception by him about April 1, 1899; disclosure of it at the same time; the making of complete drawings of the invention about August 15, 1900; the making of a model about October 1, 1900; and reduction to practice on June 15, 1901.

It was developed in the testimony that the parties were not separate inventors acting independently of each other, but that one derived the invention from the other; and that the reduction to practice claimed by each was one and the same act. The controversy, therefore, is not one of prior invention, but of originality.

The Examiner of Interferences in the Patent Office found in favor of Clauss; the Board of Examiners-in-Chief in favor of Cherney; and the Acting Commissioner of Patents in favor of Clauss as to counts 1, 2, and 6, and in favor of Cherney as to counts 3, 4, 5, 7, 8, 9, and 10. Both parties have now appealed to this court.

The invention in controversy was developed in the year 1900, in connection with the construction of some new baking-ovens for the H. H. Kohlsaat Baking Company, of Chicago, in the State of Illinois. In May and again in August of that year, the parties to the controversy, who both had relations with that company, had interviews with each other, in which each claims

to have disclosed the invention to the other for use in the ovens which were in course of construction for the Kohlsaat company. It is true that these alleged disclosures at the several times specified do not necessarily imply that both may not have had a conception of the invention before that date independently of each other; and, notwithstanding that the controversy turns in the main around these alleged disclosures by one to the other, it may well be that both were independent inventors. The appellee Clauss, at all events, has the advantage of having the patent for the invention; and as the appellant waited, apparently without any sufficient cause, until that patent had been issued, and then copied its claims for the purpose of forcing this interference, the burden is strong upon the appellant of proving his case beyond a reasonable doubt. At the same time he has in his favor the decisions of two of the three tribunals of the Patent Office,—of the Board of Examiners-in-Chief upon all the counts of the issue, and of the Acting Commissioner of Patents upon seven of the ten counts.

The oral testimony on both sides of this case, with reference to conception and disclosure of the invention, we must regard as unsatisfactory and wholly inconclusive. Clauss is corroborated by his principal witness Kosicky as to disclosure to him in April of 1900; but not a sketch, not a drawing, not an illustration of anything in concrete form is shown to have been made then or at any other time before the actual reduction of the invention to practice by the construction of five ovens for Kohlsaat company in 1901. And Clauss and Kosicky are contradicted in most important particulars by Cherney and his principal witness Bernhisel.

Again, Cherney is corroborated by Bernhisel; but the two are flatly contradicted in many things by Clauss and Kosicky. Cherney, however, has some tracings and blue prints which he shows quite satisfactorily to have been made in the year 1900.

One thing, however, is quite certain; and that is that before Clauss made any attempt whatever in any way, so far as the record before us shows, to embody his conception, if such he had, in any concrete form, Cherney had caused patterns to be made illustrative of the invention; and those patterns were in the

manufacturing establishment of the Eddy Foundry Company,
in Chicago, for the making of castings therefrom to be used in
the construction of ovens for the Kohlsaat company. These
patterns contained the first concrete disclosure of the invention;
and they were beyond question the work of Cherney, and made
under his direction and supervision. Clauss, when he was first
shown these patterns, recognized them as containing the inven-
tion, although he claimed at the same time that the idea had
been purloined from him. The denial of Cherney may
be balanced against the claim of Clauss; and the fact
remains that the first disclosure of the invention in con-
crete form was by Cherney. Upon him who would disprove
his right rests the burden of showing that the idea was that of
another person. We do not find that Clauss has sustained that
burden satisfactorily.

But the patterns mentioned contained only counts 3, 4, 5, 7,
8, 9, and 10 of the issue: they did not contain counts 1, 2, and 6.
But as all ten of the counts are contained in the patent to Clauss,
and as Cherney shows no reduction to practice before the appli-
cation for that patent, there is no reason to question the right of
Clauss to these three last-mentioned counts.

We are, therefore, of opinion that the Acting Commissioner
of Patents was right in awarding judgment of priority of inven-
tion to Clauss in respect of counts 1, 2, and 6 of the issue; and
to Cherney in respect of counts 3, 4, 5, 7, 8, 9, and 10. And
the decision will be affirmed.

The clerk will certify this opinion and the proceedings in this
court in the cause to the Commissioner of Patents according to
law.                                            *Affirmed.*